**SO ORDERED.**

**SIGNED this 16 day of October, 2015.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 11-04375-8-DMW |
| CHARLES ERNEST HESTER<br>BARBETTA GODWIN HESTER | CHAPTER 11 |
| DEBTORS | |

| | |
|---|---|
| CHARLES E. HESTER<br>BARBETTA GODWIN HESTER | |
| Plaintiffs | ADVERSARY PROCEEDING<br>NO. 15-00001-8-DMW |
| vs. | |
| JPMORGAN CHASE BANK | |
| Defendant | |

## MEMORANDUM OPINION
## PARTIALLY ALLOWING AND PARTIALLY DENYING MOTION TO DISMISS

This matter comes on to be heard upon JPMorgan Chase Bank, N.A.'s Partial Motion to

Dismiss Pursuant to Rule 12(b)(6) ("Motion to Dismiss") and accompanying Memorandum filed

by JPMorgan Chase Bank, N.A. ("Defendant") on February 16, 2015 and the Response and accompanying Memorandum filed by Charles E. Hester and Barbetta Godwin Hester ("Plaintiffs"). The court conducted a hearing in Raleigh, North Carolina on April 28, 2015. Joseph M. Lischwe, Esq. appeared for the Defendant, and Matthew W. Buckmiller, Esq. and Joseph Z. Frost, Esq. appeared on behalf of the Plaintiffs. At the conclusion of the hearing, the court denied the Motion to Dismiss; however, upon further consideration, the court grants the Motion to Dismiss with respect to Claim 3 and Claim 4 without prejudice to amendment by the Plaintiffs and denies the Motion to Dismiss with respect to the other relief as requested. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.   BACKGROUND.

1.   The Plaintiffs filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on June 6, 2011.

2.   The Plaintiffs filed a Chapter 11 Plan of Reorganization ("Plan") on October 18, 2011. Class 5 of the Plan lists 15 parcels of real property ("Rental Properties") owned by the Plaintiffs as income-producing rental properties. The Rental Properties are subject to deeds of trust in favor of the Defendant.

3.   The Plan states that the Defendant's claims relating to the Rental Properties shall be treated as follows:

> Each obligation shall remain a separate obligation and shall be treated as a fully secured obligation in an amount equal to (a) the outstanding balance due on the Petition Date; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs and expenses approved by the Court pursuant to Section 506(b); less (d) all post-petition payments. . . . [The Defendant] shall provide an updated payoff for each loan as of the Effective Date and payments due under the Plan shall be calculated based on these revised payoff numbers. . . . In the event the [Plaintiffs] do not receive updated payoffs from [the Defendant]

for each loan, payments shall be calculated off of the outstanding balances listed on Exhibit B to the [Plaintiffs]' Disclosure Statement, less all post petition payments. Upon receipt of the updated payoff statements, payments shall be adjusted accordingly.

4. The Defendant executed a ballot ("Ballot") accepting its treatment under the Plan on January 23, 2012. The Ballot included as Exhibit A an amendment that increased the interest rate at which the Defendant's loans are amortized under the Plan from the 4% rate proposed in the Plan to 5%.

5. The court entered an Order ("Confirmation Order") confirming the Plaintiffs' Plan on February 8, 2012. The Confirmation Order incorporated the modified treatment of the Defendant's claims into the Plan. Pursuant to the terms of the Plan as modified by the Confirmation Order, the Plaintiffs are required to make monthly payments to the Defendant over a 30 year period beginning on the Plan's Effective Date.

6. In accordance with the terms of the Plan, the Defendant provided the Plaintiffs with updated payoff amounts for each of the loans associated with the Rental Properties. The Plaintiffs allege that despite calculating updated payoff amounts, beginning as early as April, 2012, the Defendant has consistently communicated with the Plaintiffs to assert incorrect amounts due and that Plaintiffs are delinquent on the various loans. The Plaintiffs allege they have received correspondences including notifications of late fees, loan modification offers and notices of intent to foreclose. The Plaintiffs aver they have remained current on all payments due under the Plan since entry of the Confirmation Order.

7. The Plaintiffs filed a Motion for Contempt and Sanctions ("Motion for Sanctions") against the Defendant in their bankruptcy case on July 24, 2014.

8. The Plaintiffs filed a Complaint on January 6, 2015 that asserted as its First Claim for Relief ("Claim 1") the same allegations that were contained in the Motion for Sanctions. On

January 28, 2015, the court consolidated the Motion for Sanctions into this Adversary Proceeding and on May 12, 2015, the court dismissed the Motion for Sanctions without prejudice in the Plaintiff's bankruptcy case because the allegations are encompassed by Claim 1.

9. The Motion to Dismiss asserts that the court should dismiss all causes of actions against the Defendant, except Claim 1, for failure to state claims upon which relief can be granted. Aside from Claim 1, the Complaint alleges the following:

   a. <u>Claim 2</u>. Violations of N.C. Gen. Stat. § 75-1.1 ("75-1.1 Claim");

   b. <u>Claim 3</u>. Intentional Infliction of Emotional Distress ("IIED Claim");

   c. <u>Claim 4</u>. Negligent Infliction of Emotional Distress ("NIED Claim");

   d. <u>Claim 5</u>. Negligence ("Negligence Claim");

   e. <u>Claim 6</u>. Violations of N.C. Gen. Stat. § 75-104(a) ("75-104 Claim"); and

   f. <u>Claim 7</u>. Violations of the Telephone Consumer Protection Act ("TCPA Claim").

B. JURISDICTION.

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

3. To the extent that the IIED Claim and NIED Claim qualify as personal injury tort claims to which 28 U.S.C. § 157(b)(5) applies, the Defendant has consented to this court's resolution of the claims contained in the Complaint by filing the Motion to Dismiss. The court is granting the Motion to Dismiss with respect to the IIED Claim and NIED Claim, without prejudice

to the Plaintiffs filing amended claims. If the Plaintiffs file amended claims, then the Defendant will be deemed to have consented to this court adjudicating those amended claims.

C. DISCUSSION.

    1. Standard.

        a. Rule 12 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure, allows a party to seek dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

        b. "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

        c. As explained by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, a complaint, in order to withstand a Rule 12(b)(6) motion, must include sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007).

        d. The Supreme Court elaborated on its *Twombly* decision in *Ashcroft v. Iqbal*, in which it stated that

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

556 U.S. 662, 678 (2009) (citations omitted). The court will apply this standard to each of the claims at issue.

2.  75-1.1 Claim. The Motion to Dismiss is denied as to this claim.

   a.  The North Carolina "unfair trade practices" statute is codified in Chapter 75 of the North Carolina General Statutes. N.C. Gen. Stat. § 75-1.1 *et seq.*

   > A claim of unfair and deceptive trade practices under section 75-1.1 of the North Carolina General Statutes requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant.

   *Nucor Corp. v. Prudential Equity Group, LLC*, 659 S.E.2d 483, 488 (N.C. Ct. App. 2008) (quoting *Craven v. SEIU COPE*, 656 S.E.2d 729, 733–34 (2008)).

   b.  "A breach of contract claim, such as a disagreement with a loan servicer over terms and payments of a mortgage, must also allege egregious or aggravating circumstances to constitute an unfair or deceptive act under § 75-1.1." *Rutledge v. Wells Fargo Bank, N.A. (In re Rutledge)*, 510 B.R. 491, 508 (Bankr. M.D.N.C. 2014) (citing *Harty v. Underhill*, 710 S.E.2d 327, 332 (N.C. Ct. App. 2011)).

   c.  The Defendant asserts that because all of its alleged acts relate back to the terms of the Plan and Confirmation Order, the 75-1.1 Claim is nothing more than a breach of contract claim disguised as a Chapter 75 claim. The Defendant argues the Plaintiffs have failed to allege egregious or aggravating circumstances that would permit recovery under § 75-1.1.

   d.  While the 75-1.1 Claim, and the Complaint as a whole, alleges that the Defendant has failed to comply with the terms of the Plan and Confirmation Order, the court finds that the 75-1.1 Claim sufficiently alleges aggravating circumstances to possibly warrant recovery under N.C. Gen. Stat. § 75-1.1 *et seq.* The 75-1.1 Claim does not merely allege that the Plaintiffs disagree with the Defendant's calculations of amounts due under the Plan. Instead, the 75-1.1 Claim sufficiently alleges repeated collections measures taken

6

by the Defendant–including the assessment of late fees and charges, the threat of foreclosure and the propagation of multiple letters and phone calls informing Plaintiffs of their continued delinquency–that may qualify as aggravating circumstances.

  e.  The Defendant cites *Rutledge* in its assertion that the 75-1.1 Claim fails to rise above a breach of contract claim.  In *Rutledge*, the United States Bankruptcy Court for the Middle District of North Carolina described the debtor's complaint as "replete with instances of poor communication between servicer and borrower, confusion of [creditor's] personnel with regard to the application of insurance proceeds to the debt, and the supply of erroneous information to the [d]ebtor." 510 B.R. at 509.  Despite this finding, the *Rutledge* court held that the creditor's actions did not qualify as "unfair" under § 75-1.1 "or constitute egregious or aggravating circumstances with regard to the breach of contract claims." *Id.*

  f.  This case is distinguishable from *Rutledge*.  *Rutledge* involved a modification agreement and a similarly extensive period of time during which the debtor and creditor rarely had the same understanding of terms; however, in *Rutledge* the debtor missed certain payments and initiated subsequent modifications with the creditor that were ultimately unsuccessful or not honored by the creditor.  In the case at hand, according to the allegations contained in the Complaint, the Plaintiffs have been current on their payments since entry of the Confirmation Order and have not initiated any sort of contact with the Defendant that could be seen as contributing to confusion about the Plan's terms. The Plan is clear as to the Defendant's treatment while the documents in *Rutledge* were far from clear. The acts which the Defendant is accused of committing were unilateral in nature, and continued for three years despite the Plaintiffs' repeated requests that the

Defendant change its collections records to comply with the Plan and despite the filing of the Motion for Sanctions in the Plaintiffs' bankruptcy case. Due to these distinguishing factors, the court is not swayed by *Rutledge* to find an absence of aggravating circumstances in the Plaintiffs' case.

g. The Defendant asserts that even if the court finds that the 75-1.1 Claim qualifies as a claim under § 75-1.1, the Plaintiffs' allegations involving misrepresentations by the Defendant should be dismissed, because the Plaintiffs failed to plead detrimental reliance upon the alleged misrepresentations. "[A] claim under section 75-1.1 stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013) (likening the burden of proof for a § 75-1.1 claim to the detrimental reliance a plaintiff must prove in a fraud claim.).

h. The *Bumpers* court's interpretation of § 75-1.1 was in the context of a § 75-1.1 claim "stemming from an alleged misrepresentation" regarding the application of a loan discount to the plaintiffs' loans. *Id.* The facts in this case make *Bumpers* inapplicable. In this case, while misrepresentations by the Defendant are certainly alleged in the 75-1.1 Claim, the claim itself does not "stem from" alleged misrepresentations. In other words, the alleged injuries suffered by the Plaintiffs are not the result of inducement through misrepresentations by the Defendant for Plaintiffs to take some sort of action. Rather, the alleged misrepresentations comprise the broader claim that the Defendant engaged in systemic behavior that might qualify as unfair and deceptive acts under § 75-1.1. Similarly, although the 75-1.1 Claim alleges actions that might qualify as violations of the North Carolina Debt Collection Act ("NCDCA") if a consumer debt were involved, counsel for

the Plaintiffs explained at the hearing that Plaintiffs are not alleging the Defendant violated the NCDCA. Instead, the allegations are included to show generally the history of unfair and deceptive conduct the Defendant has allegedly committed. Although alleged misrepresentations exist in this cause of action, those allegations do not transmute the 75-1.1 Claim into a claim for misrepresentation under § 75-1.1, and a showing of reliance on the misrepresentation is not required.

    i.    The 75-1.1 Claim identifies numerous actions allegedly taken by the Defendant that may qualify as unfair or deceptive under § 75-1.1; therefore, the Plaintiffs have sufficiently pled facts to withstand the Motion to Dismiss.

3.    <u>IIED Claim and NIED Claim</u>. These claims, asserted as Claim 3 and Claim 4, will be dismissed.

    a.    <u>Severe Emotional Distress</u>.

        i.    The elements of an intentional infliction of emotional distress claim are "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Holloway v. Wachovia Bank & Trust Co., N.A.*, 452 S.E.2d 233, 240 (N.C. 1994) (quoting *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981)).

        ii.    To state a claim of negligent infliction of emotional distress, a plaintiff must allege "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Associates, P.A*., 395 S.E.2d 85, 97 (N.C. 1990).

  iii.  A common element between an intentional infliction of emotional distress claim and a negligent infliction of emotional distress claim is severe emotional distress. The Defendant asserts that the IIED Claim and NIED Claim merely make bare allegations of severe emotional distress without alleging sufficient supporting facts, and that dismissal of the IIED Claim and NIED Claim is appropriate. *See Vogler v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 88485, at *25 (M.D.N.C. Aug. 26, 2010).

  iv.  "'[S]evere emotional distress' has been defined as 'any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'" *Pierce v. Atl. Group, Inc.*, 724 S.E.2d 568, 577 (N.C. Ct. App. 2012) (quoting *Johnson*, 395 S.E.2d at 97).

  v.  A complaint need not provide an exhaustive account of the distress a plaintiff has allegedly suffered or evidence of a medical diagnosis and treatment in order to survive a motion to dismiss. *See Owens v. Dixie Motor Co.*, 2013 U.S. Dist. LEXIS 97046, at *11 (E.D.N.C. July 11, 2013). "Where plaintiffs allege fear, anxiety, depression, neurosis, phobia and paranoia as a result of [a defendant's] conduct, plaintiffs state sufficient facts to show "severe emotional distress" under North Carolina law." *Owens*, 2013 U.S. Dist. LEXIS 97046, at *12 (finding that plaintiff need not assert a medical diagnosis to sufficiently allege severe emotional distress caused by defendant inmate who called from jail to tell plaintiff he had her social security number and other personal information). However, "[a]llegations

that do not identify a recognized and diagnosable mental or emotional disorder are not sufficient." *Waggett v. Select Portfolio Servicing, Inc. (In re Waggett)*, 2015 Bankr. LEXIS 840, at *39 (Bankr. E.D.N.C. Mar. 17, 2015).

    vi.    The Plaintiffs allege in Paragraph 116 of the Complaint that they endured "mental suffering, shock, anxiety, grief . . . [and] nervousness" as a result of the Defendant's actions. These assertions are insufficient to establish that the Plaintiffs suffered any sort of "disabling emotional or mental condition" that would constitute severe emotional distress. *Pierce*, 724 S.E.2d at 577; *Waggett*, 2015 Bankr. LEXIS 840, at *40. Because the Plaintiffs have failed to allege sufficient facts to establish the element of severe emotional distress, the IIED Claim and NIED Claim, as filed, cannot survive the Motion to Dismiss.

    b.    <u>IIED Claim: Insufficiencies on Other Grounds</u>. The Defendant also challenges the IIED Claim by asserting that a) the Plaintiffs have failed to allege extreme and outrageous conduct on the part of the Defendant; and b) in the context of a customary commercial transaction, a plaintiff must prove calculated conduct by the defendant to succeed on an intentional infliction of emotional distress claim. Because the IIED Claim is being dismissed for its failure to sufficiently allege severe emotional distress, there is no need for the court to address the Defendant's alternate grounds for dismissal.

4.    <u>Negligence Claim</u>. The Motion to Dismiss will be denied as to this claim.

    a.    In North Carolina, the elements of a negligence claim are "duty, breach of duty, proximate cause, and damages." *Olds v. United States*, 473 Fed. Appx. 183, 185 (4th Cir. 2012) (quoting *Camalier v. Jeffries*, 460 S.E.2d 133, 136 (N.C. 1995)).

  b. The Defendant cites *Nance v. Citimortgage, Inc.*, 2014 U.S. Dist. LEXIS 108871 (M.D.N.C. Aug. 7, 2014), for the proposition that although a duty may arise out of a contractual relationship, "a legal duty typically does not arise in a commercial borrower-lender setting . . . ." 2014 U.S. Dist. LEXIS 108871, at *19–21. What the Defendant fails to recognize, however, is that the Plan and Confirmation Order imposed additional duties upon the Defendant outside the "typical" borrower-lender relationship. One of those duties, stated in the Class 5 treatment outlined in the Confirmation Order, was the duty to provide updated payoff amounts to the Plaintiffs and then honor payments based on those payoff figures. The court finds that the special circumstances of the relationship between the Plaintiffs and the Defendant, namely the additional requirements imposed by the Plan and Confirmation Order, give rise to the potential for a legal duty being present.

  c. The Negligence Claim generally asserts that the Defendant "had a duty to conduct itself as a reasonably prudent person, lender or entity would under the same or similar circumstances . . ." and does not identify the Plan or Confirmation Order as the source of any more specific duty imposed on the Defendant. The Defendant argues that this failure to make a more specific allegation of the Defendant's duties is fatal to the Negligence Claim.

  d. While the assertions contained in the Negligence Claim do not highlight the duties imposed by the Plan and Confirmation Order, the court finds the language sufficient to allege breach of the duty to use reasonable care in performing the obligations imposed by the Plan and the Confirmation Order. As the court in *Nance* pointed out, "the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in affirmatively performing that promise." *Nance*, 2014 U.S. Dist. LEXIS 108871, at *19.

For purposes of the Motion to Dismiss, the court finds that the Plaintiffs have alleged sufficient facts to state the elements of a negligence claim upon which relief could be granted.

5. <u>75-104 Claim</u>.  The Motion to Dismiss will be denied as to this claim.

    a. N.C. Gen. Stat. § 75-104(a) prohibits any person from using "an automatic dialing and recorded message player to make an unsolicited telephone call" unless a specific exemption applies. N.C. Gen. Stat. § 75-104(a) (2009).  The Defendant asserts that debt collectors are specifically excepted from the purview of § 75-104(a) pursuant to § 75-104(b)(3), which states

> a person may use an automatic dialing and recorded message player to make an unsolicited telephone call . . . [if t]he unsolicited telephone call is in connection with an existing debt or contract for which payment or performance has not been completed at the time of the unsolicited telephone call, and both of the following are satisfied:
>   a. No part of the call is used to make a telephone solicitation.
>   b. The person making the call clearly identifies the person's name and contact information and the nature of the unsolicited telephone call.

N.C. Gen. Stat. § 75-104(b)(3) (2009).

    b. The Defendant misses the point of the exception outlined in § 75-104(b)(3).  The exception applies to debt collectors collecting a *delinquent* debt.  According to the Complaint, all of the Plaintiffs' post-confirmation payments to the Defendant were timely.

    c. The Defendant also goes into detail in the Motion to Dismiss regarding the definition of a "telephone solicitation" according to N.C. Gen. Stat. § 75-101(9), but again this argument is misguided.  The language of § 75-104(a) covers unsolicited phone calls but is not necessarily limited to telephone solicitations.  The language of § 75-104(a) is quite simple, as are the exceptions enumerated in § 75-104(b).  Section 75-104(a) applies to any unsolicited telephone call made using automatic dialing and a recorded message

13

played. None of the exceptions applies to the alleged phone calls made by the Defendant, and the Motion to Dismiss should be denied with respect to the 75-104 Claim.

6. TCPA Claim. The Motion to Dismiss will be denied as to this claim.

a. The Telephone Consumer Protection Act prohibits

> any person within the United States, or any person outside the United States if the recipient is within the United States . . . [from making] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

b. The Defendant asserts the Plaintiffs only implied that an automatic dialer may have been used to initiate phone calls, but this is incorrect. Paragraph 154 of the Complaint clearly states that the Defendant "used an 'automatic telephone dialing system' as that term is defined by and contemplated in 47 U.S.C. § 227(a)(1) . . . ."

c. The Complaint also asserts the phone calls initiated by the Defendant were for non-emergency purposes and were made without the prior express consent of the Plaintiffs.

d. The only element of 47 U.S.C. § 227(b)(1)(A)(iii) that is not explicitly alleged within the TCPA Claim is the fact that the phone calls made by the Defendant were to the Plaintiffs' cellular phone(s). Paragraph 156 of the Complaint alleges that "[e]ach telephonic communication made by Defendant to any of Plaintiffs' telephones (home or cellular)" was made in violation of 47 U.S.C. § 227(b)(1)(A)(iii). While this assertion could have been more artfully worded, the court finds the language of Paragraph 156 of the Complaint sufficiently alleges that calls in violation of 47 U.S.C. § 227(b)(1)(A)(iii) were made to Plaintiffs' cellular phone(s). Further, Paragraph 101(F) of the Complaint,

14

incorporated into the TCPA Claim by Paragraph 152, specifically alleges that the Defendant called Plaintiffs on their cellular telephones regarding delinquent payments. Accordingly, the Motion to Dismiss is denied with respect to the TCPA Claim.

7.  Conclusion. The Defendant has undoubtedly identified potential weaknesses in the Plaintiffs' case. Despite these apparent weaknesses, the court finds that the 75-1.1 Claim, Negligence Claim, 75-104 Claim and TCPA Claim satisfy the standards applicable to a motion brought under Fed. R. Civ. P. 12(b)(6). Each of these causes of action, if all well-pled facts are accepted as true and are construed in the light most favorable to the Plaintiffs, states a facially plausible claim for relief. The IIED Claim and NIED Claim fail to allege sufficient facts to support the presence of the essential element of severe emotional distress, and those claims should be dismissed without prejudice to Plaintiffs filing amended claims; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1.  The Motion to Dismiss is denied as to the 75-1.1 Claim, Negligence Claim, 75-104 Claim and TCPA Claim;

2.  The Motion to Dismiss is granted as to the IIED Claim and NIED Claim, without prejudice to the Plaintiffs filing amended claims. The Plaintiffs shall have 14 days from the date of this Opinion to file amended claims asserting intentional and/or negligent infliction of emotional distress; and

3.  In order to allow Plaintiffs time to file amended claims consistent with this Opinion, the Defendant shall have 45 days from the date of this Opinion to file an Answer to the Complaint. This time period is longer than the 30 day period that was announced at the conclusion of the hearing on the Motion to Dismiss.

END OF DOCUMENT